[Cite as *State v. Ball*, 2022-Ohio-1549.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,           CASE NO. 1-21-16

      v.

JAISHAUN M. BALL,           O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2019 0135

**Judgment Affirmed**

**Date of Decision: May 9, 2022**

APPEARANCES:

    *Dennis C. Belli* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, Jaishaun M. Ball ("Ball"), brings this appeal from the April 29, 2021 judgment of the Allen County Common Pleas Court sentencing Ball after he was found guilty in a jury trial of multiple drug convictions, a firearm specification, and having a weapon under disability.

*Facts and Procedural History*

{¶2} In May 2019, Ball was indicted in a six-count indictment of: one count of possession of cocaine in violation of R.C. 2925.11(A)/(C)(4)(a), a felony of the fifth degree (Count 1); three counts of trafficking in cocaine in the vicinity of a school in violation of R.C. 2925.03(A)(1)/(C)(4)(a) and (b), felonies of the fourth degree (Counts 2-4); one count of possession of cocaine in violation of R.C. 2925.11(A)/(C)(4)(f), a major drug offender felony of the first degree (Count 5); and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2)/(B), a felony of the third degree (Count 6). Count 5 also contained a firearm specification pursuant to R.C. 2941.141(A), along with forfeiture specifications relating to a firearm and to $2,394.00 in U.S. currency. Ball pled not guilty to the charges.

{¶3} Ball's case proceeded to a jury trial. After a three-day trial, the jury found Ball guilty on all counts. The trial court ordered a presentence investigation and set the matter for a sentencing hearing on April 29, 2021. The trial court

sentenced Ball as follows: six months in prison on Count 1; eighteen months in prison on each of Counts 2 through 4; a mandatory minimum eleven-year prison term up to a maximum sixteen and one-half year prison term for Count 5, as well as the major drug offender specification; and twenty-four months in prison on Count 6. Counts 5 and 6 are to be served consecutively to each other and consecutive to the one-year firearm specification, while all other terms are to be served concurrently, except for Count 6 to be served consecutively, resulting in an aggregate minimum sentence of fifteen and one-half years to an aggregate maximum of twenty-one years in prison. The trial court also imposed a five-year term of post release control. The trial court also ordered the forfeiture of a firearm and $2,394.00 to the West Central Ohio Crime Task Force.

{¶4} It is from this judgment that Ball appeals, asserting the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. 1

**DEFENDANT-APPELLANT'S CONVICTIONS FOR POSSESSION OF COCAINE IN AN AMOUNT EQUAL TO OR EXCEEDING 100 GRAMS AND A MAJOR DRUG OFFENDER SPECIFICATION, AND FOR POSSESSION OF COCAINE IN AN AMOUNT LESS THAN FIVE GRAMS, ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. 2**

**DEFENDANT-APPELLANT'S CONVICTIONS FOR HAVING A WEAPON UNDER DISABILITY AND A FIREARM SPECIFICATION ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT'S DENIAL OF A DEFENSE MOTION FOR A MISTRIAL OR, IN THE ALTERNATIVE, REQUEST FOR A CURATIVE INSTRUCTION AS A REMEDY FOR THE STATE'S DISCOVERY VIOLATION DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A RELIABLE JURY VERDICT.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT'S REFUSAL TO GIVE THE INFORMANT CREDIBILITY INSTRUCTION REQUESTED BY DEFENSE COUNSEL WAS ERROR THAT DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A RELIABLE JURY VERDICT.**

**ASSIGNMENT OF ERROR NO. 5**

**DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO THE COMBINED PREJUDICIAL IMPACT OF MULTIPLE INSTANCES OF DEFICIENT PERFORMANCE.**

## ASSIGNMENT OF ERROR NO. 6

**THE IMPOSITION OF AN INDEFINITE TERM OF IMPRISONMENT ON COUNT 5 PURSUANT TO THE MANDATES OF THE REAGAN TOKES ACT VIOLATED THE SEPARATION OF POWERS DOCTRINE AND DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS AND JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 5 AND 10 OF THE OHIO CONSTITUTION, AND ROSE TO THE LEVEL OF PLAIN ERROR.**

{¶5} For ease of discussion, Ball's first and second assignments of error will be addressed together.

*First and Second Assignments of Error*

{¶6} Ball argues in the first assignment of error that there was insufficient evidence presented at trial to support his possession of cocaine convictions. In the second assignment of error, Ball argues that the evidence was insufficient to support the firearm specification and his weapons under disability conviction.

*Standard of Review*

{¶7} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When an appellate court reviews a record upon a sufficiency challenge, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54,

Case No. 1-21-16

2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

*Relevant Statutes*

{¶8} Ball was convicted of possession of cocaine in violation of R.C. 2925.11(A)/(C)(4)(a) which occurred on March 12, 2018. Ball was also convicted of possession of cocaine as a major drug offender in violation of R.C. 2925.11(A)/(C)(4)(f) which occurred on April 1, 2019. R.C. 2925.11(A) reads, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶9} R.C. 2925.11(C)(4) provides:

**If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:**

**(a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

**\* \* \***

**(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.**

{¶10} A firearm specification was attached to the second possession offense pursuant to R.C. 2941.141(A). It requires that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A).

{¶11} Ball was also convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which reads "* * * [N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence[.]"

*Evidence Presented*

*a. Testimony Regarding March 12, 2018*

{¶12} Patrolman Mark Link ("Patrolman Link") of the Lima Police Department testified that he was working third-shift patrol on March 12, 2018, when he was contacted by an employee of Ray's Place, a local bar, about an unwanted person trespassing on the premises. Patrolman Link was told that the person was sitting in a grey Chevy Impala in the parking lot and he also was given the license plate number.

{¶13} Upon arrival at the bar, Patrolman Link then observed the Impala parked towards the back of the bar's parking lot, with a person sitting in the passenger seat and the car door open. This person, subsequently identified as Ball, was the only person in the vehicle. Patrolman Link got out of his cruiser, and as he

approached the passenger's side of the Impala, seemingly unnoticed by Ball, he saw that Ball was leaning out of the vehicle. As Patrolman Link watched, Ball reached down to the ground and picked up a clear tied-off plastic baggie that Patrolman Link believed, based on his experience, probably contained narcotics. Patrolman Link stepped up to the passenger's side door and when he said, "Give me what you got in your hand," Ball made a tight fist with his right hand around the baggie, and then shoved it up under his right leg. (Trial Tr., Vol. 1, p. 213). Patrolman Link asked Ball what he had, and he said "nothing" and then "leaned back" in the vehicle. *Id.* Patrolman Link stepped closer to the vehicle, grabbed Ball's jacket and ordered Ball to give him the baggie, to which Ball said, "No." *Id.* at 214. As Patrolman Link began trying to force Ball's arm out in order to seize the suspected narcotics, Ball leaned back even further and he then threw his arm back in the direction of the backseat. Another patrolman arrived to assist Patrolman Link and they both struggled with Ball to get him out of the vehicle. Ball continued to resist the officers' attempts to handcuff and detain him. Additional officers arrived on the scene and once Ball was detained, Patrolman Link went back to check the Impala. In the location right where Ball had put his hand into the backseat, Patrolman Link found the clear plastic baggie that he had observed earlier, which contained an off-white substance that Patrolman Link believed to be crack cocaine. Subsequent analysis of the baggie's contents by the Ohio Bureau of Criminal Investigation

("BCI") established that the substance weighed approximately 1.76 grams and contained cocaine.

 b. *Testimony Regarding April 1, 2019*

{¶14} At approximately 7:25 a.m. on April 1, 2019, investigators with the West Central Ohio Crime Task Force and the Allen County Sheriff's Office Swat Team executed a search warrant at 953 Rice Avenue, Lima. Sergeant Brandon Hemker ("Sergeant Hemker") of the Allen County Sheriff's Office was assigned to the task force and he also obtained the search warrant after three controlled buys took place at that address involving a confidential informant, S.B. (CI).

{¶15} Sergeant Hemker testified as a State's witness about the search warrant executed at 953 Rice Avenue. Two persons were located in the residence—Ball and his four or five-year old son. Ball was found in the southwest bedroom on the second floor where he apparently had been sleeping. In the bedroom Ball described as "his bedroom" to Sergeant Hemker, two cell phones were found on top of the bed, as well as Ball's driver's license. (Trial Tr., Vol. 2, p. 493). At Ball's request, Sergeant Hemker used one of those phones to call Ball's grandmother so that she could come pick up Ball's young son. Ball's social security card, his birth certificate, and Ball's son's birth certificate were also located in the dresser of Ball's bedroom. Some pieces of mail and a utility bill in the name of Ball's brother were also found in the house.

{¶16} After being advised of his Miranda rights, Ball spoke briefly with Sergeant Hemker and when he was asked whose residence the house was, he told him he lived there with his son. Ball said that he was the only one living there, and that he paid all the utilities in lieu of rent. Ball advised that he worked for a construction company when the weather permitted but that he was not working at that time.

{¶17} Pursuant to the search, multiple digital scales with white powdery residue on them were found in the kitchen, and suspected crack cocaine was found in the same area. Subsequent analysis of that substance by BCI established that the substance weighed approximately 1.78 grams and contained cocaine. A bag of unknown substance was also found in an oven mitt in the kitchen. Subsequent analysis by BCI of that substance revealed that the substance weighed approximately 37.42 grams and contained cocaine.

{¶18} On the roof over the back patio, in a fenced-in area only accessible from the house, investigators found a large quantity of cocaine in a Crown Royal bag. Subsequent analysis by BCI of the substance found in the Crown Royal bag established that the substance weighed approximately 113.54 grams and contained cocaine. The street value of the cocaine in the Crown Royal bag was $7,000.00 to $10,000.00. Additionally, $25.00 in cash was found in Ball's bedroom dresser drawer; $12.00 in cash was found in a shirt in Ball's bedroom; $195.00 in cash was

found in a pair of pants on the floor of Ball's bedroom; $2,000.00 in cash was found in a pair of jeans in Ball's bedroom closet; $122.00 in cash was found in the living room; and $40.00 in cash was found in the mailbox. Mixed in with the $2,000.00 in cash found in Ball's bedroom closet were several bills used in the controlled drug buy that had occurred on March 22, 2019.

{¶19} In addition, one of the investigators found a firearm (a Sig Sauer P250), a magazine fitting that firearm, and bullets in a linen closet located right next to the door to the bedroom where Ball was found.

*Sufficiency of the Evidence*

{¶20} Ball argues on appeal that the evidence was insufficient to prove he was in constructive possession of the cocaine found on the roof. Specifically, Ball argues that there was insufficient circumstantial evidence to support the conviction, because the evidence failed to show that Ball was "conscious of the presence of the major drug offender quantity of cocaine." (Appellant's Brief at 8). Ball also argues that there was not sufficient evidence of actual possession of the baggie of cocaine seized from the vehicle as he had momentary control of the baggie.

{¶21} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Whether a person charged with drug possession knowingly

possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 1998-Ohio-193 (1998); *accord State v. Davis*, 3d Dist. Allen Nos. 1-17-44 and 1-17-45, 2018-Ohio-4368, ¶ 48.

{¶22} " ' "Possession of drugs can be either actual or constructive." ' " *Davis* at ¶ 49, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, at 51, quoting *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26 and 13-13-04, 2013-Ohio-4975, ¶ 25. Actual possession exists when the circumstances indicate that a person has or had an item " ' "within his immediate physical possession." ' " *Id.* quoting *State v. Watts*, 3d Dist. Hancock No. 5-12-34, 2016-Ohio-257, ¶ 11, quoting *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. Constructive possession exists when a person was able to exercise dominion and control over an item, even though that item may not be within his immediate physical control. *Id.* Both dominion and control, and whether a person was conscious of the item's presence, may be established through circumstantial evidence. *E.g., State v. Myles*, 3d Dist. Marion No. 9-19-74, 2020-Ohio-3323; ¶ 25; *see also State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

{¶23} Thus, the State may establish constructive possession by circumstantial evidence alone. *Id.* at ¶ 50. " 'Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are

evidence that the trier of fact can consider in determining whether the defendant had constructive possession.' " *Id.* quoting *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19.

**{¶24}** Here, reviewing the evidence in the light most favorable to the State, we conclude the jury could have rationally inferred beyond a reasonable doubt Ball's constructive possession of the bag of cocaine found on the roof. Throughout the house, multiple quantities of cocaine were found, and Ball was not only present in the house when police executed the search warrant, but acknowledged living there, with he and his young son being the only two occupants. The cocaine was found in readily accessible locations in and about Ball's residence, all locations over which Ball had admitted sole dominion and control. Ball exercised constructive possession over the large quantity of cocaine discovered on the patio roof because, in part, it was in a location that could only be accessed by coming through the house and out the back door, so the roof appeared only accessible to those who lived there. Further, the jury could infer Ball's knowledge of the presence of the cocaine being stored there based upon the fact that the cocaine found on the low-hanging roof was valued at $7,000.00 to $10,000.00, as it would have been unreasonable to believe that someone not living in the house could somehow access the roof and would then also leave behind something of such value. The fact that even though Ball said that he was unemployed at the time of the search warrant but yet was found in possession

of over $2,000.00 in cash and the fact that there were digital scales with powdery residue located in Ball's kitchen also supported a reasonable inference that Ball possessed the large quantities of cocaine.

{¶25} There was also sufficient evidence to support the jury's finding that Ball knowingly possessed the baggie of cocaine discovered in the vehicle. The facts established in the record show that Ball was caught by police picking up a baggie of cocaine from the ground next to his open vehicle door. The evidence reflecting that Ball first attempted to hide the cocaine in his closed fist under his leg supports a finding that Ball knew the plastic baggie contained cocaine. Possession was also established by evidence that Ball then reached his arm back and dropped the cocaine into the backseat while simultaneously refusing to get out of the vehicle.

{¶26} As to the firearm specification and the weapon under disability offense, there is no evidence of actual possession, so the State must establish Ball had constructive possession of the firearm. The evidence established that Ball possessed the cocaine at 953 Rice Avenue while also having an operable firearm under his constructive control, as the gun, its magazine and the ammunition for that gun were located ready at hand in the linen closet located right next to Ball's bedroom, being the same bedroom where Ball himself was located when officers entered the home pursuant to the search warrant. Viewing those facts along with all other evidence adduced at trial in a light most favorable to the prosecution, a rational

juror could have found Ball guilty of "having" the firearm within the meaning of the weapon under disability and firearm specification statutes, beyond a reasonable doubt.

*Third Assignment of Error*

{¶27} In his third assignment of error, Ball argues that the trial court erred in denying his motion for a mistrial based on a purported discovery violation committed by the State. Ball argues that the State failed to disclose the existence of a second search warrant for the Rice Avenue address during the pretrial discovery process and that Ball was prejudiced by it. Ball also argues that the trial court erred in denying his alternative request for a curative instruction to remedy what he asserts as the State's discovery violation.

*Standard of Review*

{¶28} A trial court's grant or denial of a motion for mistrial rests within the sound discretion of the trial court. *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 61, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168. For that reason, we review the denial of a mistrial for an abuse of discretion. *Id.* Regarding the alleged discovery violation, we will also review the trial court's decision under an abuse of discretion standard. *See id.* at ¶ 93.

*Criminal Rule 16(B)(3)*

**{¶29}** In this assignment of error, Ball contends that the State violated

Crim.R. 16(B)(3).

**{¶30}** Crim.R. 16(B), *Discovery: Right to Copy or Photograph*, states:

**Upon receipt of a written demand for discovery by the defendant, * * * the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items** *related to the particular case indictment*, **information, or complaint,** *and which are material to the preparation of a defense*, **or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:**

**\* \* \***

**(3) Subject to divisions (D)(4) and (E) of this rule, all laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places[.] (Emphasis added.)**

*The Alleged Discovery Violation, Mistrial Motion, and Ruling by the Trial Court*

**{¶31}** During defense counsel's cross-examination of Sergeant Hemker, defense counsel asked whether, following the April 1st search, the task force had returned to 953 Rice Avenue on a subsequent date with another search warrant, after Ball had bonded out of jail. Sergeant Hemker confirmed that another search warrant was obtained for that address, a week or two following Ball's release from jail. Defense counsel asked if anything was seized during that search and if anyone had

been present in the home at that time. Sergeant Hemker answered both questions in the negative. Counsel then asked for a sidebar.

{¶32} With the jury excused, defense counsel stated that the information relating to the subsequent search warrant had not been disclosed by the State in discovery, but further stated that the prosecutors on the case apparently had no knowledge about this subsequent warrant. At that point, the trial court inquired as to whether it was in relation to the investigation in this case. Sergeant Hemker explained that the subsequent search warrant had also focused on Ball as a suspect, based on probable cause to believe Ball had committed an additional illegal drug transaction after bonding out of jail following an investigation using a different confidential informant to purchase narcotics from Ball at 953 Rice Avenue. The trial court then took a recess in order to obtain a copy of the subsequent search warrant and affidavit for review (which included a DVD recording of Sergeant Hemker's testimony before the judge issuing the warrant). Back on the record, defense counsel asked for a recess until the following morning in order to review the items and formulate the defense position on the issue. The trial court paused defense counsel's cross-examination of Sergeant Hemker, and the trial then proceeded on testimony by another witness.

{¶33} The next morning, defense counsel moved for a mistrial for a discovery violation because the information relating to the subsequent search

warrant had never been disclosed to the defense. The State responded that that information was not relevant to the trial charges. The trial court determined the information was not discoverable as it related to alleged subsequent conduct of Ball and the execution of a search warrant that was not germane to the charges in this case. The trial court found no discovery violation and, consequently, that a mistrial was not warranted.

*Ball's Argument on Appeal and Analysis*

{¶34} On appeal, Ball's mistrial argument focuses on the nondisclosure of the information relating to the subsequent search warrant as being "material to the preparation of Ball's defense" under Crim.R. 16(B)(3). (Appellant's Brief at 16).

{¶35} In our review of the trial court's decision on this matter, we find the trial court reasonably determined that the information was not relevant to the instant case, and that the information about that search would not have been exculpatory or otherwise discoverable. Moreover, as the record reflects that defense counsel indicated he had first heard of the subsequent search warrant from Ball, Ball cannot legitimately complain that his defense has been prejudiced by the State's failure to disclose information about which Ball already had knowledge. Accordingly, we cannot find that the trial court abused its discretion in finding no discovery violation and in denying a mistrial.

{¶36} Ball's second argument is that the discovery violation required "a curative instruction." His argument relies on an underlying premise—that a discovery violation occurred. We note that the trial court specifically ruled that a discovery violation did not occur; therefore, no remedy was needed.

{¶37} For these reasons, Ball's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶38} In Ball's fourth assignment of error, he contends that the trial court erred by refusing his request for a special jury instruction on informant credibility. The informant credibility instruction requested by Ball, which is based on the Ohio State Bar Association jury instruction titled "State's Use of Informers," states:

> **The state of Ohio introduced in this case the testimony of (an informer, informers).**
>
> **There is nothing improper in the prosecution's use of informers. The fact that a witness has received benefits or promises from the state of Ohio does not mean that (his, her) testimony is not worthy of belief for that reason alone.**
>
> **On the other hand, when an informer testifies, such testimony must be examined with greater caution than the testimony of an ordinary witness. You should consider whether the (informer, informers) received any benefits or promises from the state of Ohio, which would motivate (him, her, them) to testify falsely against the defendant. For example, the (informer, informers) may believe that (he, she, they) will continue to receive these benefits only if the (informer, informers) (produce, produces) evidence of criminal conduct against (defendant's name)'s interests. You should consider these factors, along with all other factors bearing on the credibility of the witness, in determining whether to believe the testimony.**

> **If you decide to accept the (informer's, informers') testimony, after considering it in the light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.**

(Doc. No. 164).

*Relevant Authority*

**{¶39}** " '[I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge.' " *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 134, quoting *State v. Scott*, 26 Ohio St.3d 92, 101 (1986). " 'However, the trial court need not give the defendant's requested instructions verbatim but may use its own language to communicate the same legal principles to the jury.' " *Id.* quoting *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 108.

**{¶40}** In addition to the foregoing, in *State v. Scott*, 26 Ohio St.3d 92 (1986), the Ohio Supreme Court addressed the issue of special jury instructions concerning the credibility of addict-informers.

> **In *Scott*, the Court reiterated its precedent that Ohio trial judges are "forbidden '***[t]o single out one witness, or a number of witnesses, for either the prosecution or the defense, and to discuss their credibility ***.' *Curtis v. State* (1925), 113 Ohio St. 187, 209-210. Such a practice is considered as placing undue influence upon the jury." *Scott*, 26 Ohio St.3d at 100-101. Subsequently, the Ohio Supreme Court followed this precedent in refusing to require special jury instructions concerning the credibility of police witnesses. *State v. Group*, 98 Ohio St.3d 248, 265-266, 2002-Ohio-7247.**

> **Where the trial court adequately covers witness credibility in its general charge to the jury, there is no need for special comment or instruction.** *Id.* **"[A] trial judge may not single out a particular witness or group of witnesses to discuss their credibility, since such discussion exerts an undue influence on the jury."** *Id.* **at 266.**

*State v. Trapp*, 8th Dist. Cuyahoga No. 85446, 2005-Ohio-4829, ¶ 10-11.

*Analysis*

**{¶41}** Although the trial court ruled that the proposed instruction would not be given, it did instruct the jury in detail on "witness credibility," including how the same should be evaluated. The jury was instructed that they were the sole judges of the credibility of witnesses. The jury was also instructed that in making their assessment of witness credibility, they should apply the tests of truthfulness which they apply in their daily lives, including the appearance of each witness upon the stand; their manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear and know the things concerning the testimony; the accuracy of the witness' memory; frankness or the lack of it; intelligence; interest and bias, if any, together with all the facts and circumstances surrounding the testimony. The jury was further instructed that, upon applying those tests, they should assign to the testimony of any witness the weight deemed proper. Finally, the jury was instructed that they were not required to believe the testimony of any witness simply because the witness was under oath and that the jury was free to believe or disbelieve all or any part of the testimony of any witness.

**{¶42}** As set forth above, the trial court comprehensively addressed the issue of witness credibility in the general charge. Consequently, at trial, the testimony concerned itself with the fact that the CI received a benefit for her testimony and that she might be motivated to testify falsely against Ball. Sergeant Hemker, as the lead task force investigator, testified extensively about the circumstances surrounding the CI working for the task force in exchange for "case consideration" on her own potential fifth degree felonies of three drug trafficking and two drug possession charges. The CI testified at trial she was an active heroin user and acknowledged she was "working off" those potential charges as a confidential informant.

**{¶43}** In light of the general witness credibility instruction given by the trial court, and in light of the holding in *State v. Scott*, we conclude the trial court did not err by denying Ball's request to include the proposed instruction concerning the credibility of the CI's testimony.

*Fifth Assignment of Error*

**{¶44}** In his assignment of error, Ball contends he was deprived of his constitutional right to effective assistance of counsel because of several alleged errors in trial counsel's representation during the course of the trial and sentencing.

*Legal Standard*

**{¶45}** "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although the issue of ineffective assistance of counsel is a two-pronged analysis, the appellate court does not need to consider the facts of the case under both prongs if the appellant makes an insufficient showing on one. *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 18, citing *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, 2016-Ohio-3499, ¶ 20 (3d Dist.).

**{¶46}** To establish deficient performance, Ball must show that his trial counsel's performance fell below an objective standard of reasonable representation. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133. A claim of deficient performance must overcome the " ' "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " *State v. Davis*, 3d Dist. Allen Nos. 1-17-44 and 1-17-45, 2018-Ohio-4368, at ¶ 76, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), quoting *Strickland* at 687-88.

**{¶47}** To establish prejudice due to the alleged deficient performance, " '[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, quoting *Strickland* at 694. *See also State v. Bradley* at paragraphs two and three of the syllabus. " 'A reasonable probability is a probability sufficient to undermine the confidence in the outcome.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 82, quoting *Strickland* at 694.

*Analysis*

{¶48} Ball first contends his trial counsel performed below an objective standard of reasonableness by failing to move to exclude or otherwise object to testimony about the presence of his young son during the controlled cocaine buys and testimony that his son was present in the residence when the search warrant was executed. Ball argues the testimony was not needed to prove an element of the charges crimes and he was unfairly prejudiced.

{¶49} Here, the record shows any trial testimony relating to the presence of Ball's son during the crimes at issue was very brief, relevant within the context of the facts of this case, and not unfairly prejudicial to Ball. Accordingly, we find that Ball has not shown trial counsel's performance fell below an objective standard of reasonable representation.

{¶50} Ball next contends that trial counsel's performance was deficient by failing to object to testimony from Sergeant Hemker, the lead task force

investigator, about the methods used to conduct drug investigations to lead them to a bigger fish. Ball contends such background testimony had no relevant value and the obvious intent of the questioning was to portray Ball as a major drug dealer. However, we note that an attorney's failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103. And a review of the contested testimony reflects that this testimony was explanatory information about the investigative method used in developing the confidential informant to lead police to someone who had sold her drugs, or the bigger fish.

**{¶51}** Ball also contends that trial counsel was deficient when questioning Sergeant Hemker during cross-examination about the use of informants. Ball specifically refers to testimony elicited with regard why Sergeant Hemker uses the gender-neutral pronoun "they" in his reports rather than he or she when referring to the confidential informant. As the State counters, however, the question posed by trial counsel "served to clarify for counsel that the pronoun 'they' was used in a gender-neutral sense but in the singular, as opposed to being used by Hemker in the plural sense, which would have indicated that there was more than one confidential informant involved here." (Appellee's Brief at 19). This questioning followed Sergeant Hemker's testimony on direct examination that there were two confidential informants—one who had told him Ball lived at the same residence that the CI in

this case told him they could buy from. Additional questions on re-direct examination concerning this matter did not suggest that Ball posed any specific risk of harm to the informant here but, rather, the witness explained that the task force generally uses "they" in reports when referring to a confidential informant in order to protect the identity of the informant. Under these circumstances, it appears trial counsel made a strategic decision to ask the complained-of question in an attempt to clarify and ascertain if there had been another undisclosed confidential informant and therefore another potential eye-witness to the controlled buys. When considering these circumstances, Ball's trial counsel did not provide ineffective assistance of counsel.

{¶52} Next, Ball asserts that trial counsel performed deficiently by asking Sergeant Hemker if a second search warrant had been served at the same residence following Ball's release from jail. At the very least, because such an inquiry could have served to potentially uncover both a discovery violation and/or exculpatory evidence, although it did not as ultimately addressed in Ball's third assignment of error, trial counsel cannot be deemed to have been ineffective in asking such a question. Further, our review of the record indicates that Ball has failed to show how he suffered material prejudice from the jury hearing that a second search warrant had been subsequently served at Ball's residence, with no one present in the

house, nothing seized during the search, and the "house looked exactly the same way" as they left it on April 1st. (Trial Tr., Vol. 2, p. 505-506).

{¶53} Ball's final assertion is that the cumulative effect of the foregoing alleged errors made by his counsel at trial prejudiced him and denied him a fair trial. However, from the foregoing analysis of each of Ball's allegations, this argument is necessarily unpersuasive. Accordingly, inasmuch as Ball is unable to establish his specific allegations of ineffective assistance of counsel, he is unable to show a cumulative effect of errors.

{¶54} Ball's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶55} Ball contends the trial court committed plain error because the Regan Tokes Act under which it imposed an indefinite maximum prison term of sixteen and one-half years in prison on Count 5 is unconstitutional.

*Legal Standard*

{¶56} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). An error qualifies as "plain error" only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 8, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 245, 2002-Ohio-2126, ¶ 32.

*Analysis*

**{¶57}** Ball did not challenge the constitutionality of the Reagan Tokes Law before the trial court. For this reason, we apply the plain error standard in this case. *Accord Barnhart* at ¶ 8.

**{¶58}** Ball raises three constitutional arguments to the Reagan Tokes Act. Relying on the 8th District Court of Appeals' decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, Ball specifically argues that the Act violates his constitutional right to a trial by jury, separation of powers doctrine, and due process.

**{¶59}** Ball's challenges do not present a matter of first impression in this Court. Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights. *E.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21.

**{¶60}** In this case, Ball asks us to reconsider our earlier decisions. In recent months, a number of defendants have requested the same of us—requests that we

have uniformly rejected. *E.g.*, *State v. Abston*, 3d Dist. Henry No. 7-21-04, 2022-Ohio-884, ¶ 33; *Wolfe* at ¶ 22; *Barnhart* at ¶ 12-15; *State v. Mitchell*, 3d Dist. Allen No. 1-21-02, 2021-Ohio-2802, ¶ 17; *State v. Rodriguez*, 3d Dist. Seneca No. 13-20-07, 2021-Ohio-2295, ¶ 15. As Ball has not presented us with any compelling reason to depart from our earlier precedent on facial challenges to Reagan Tokes, we once again decline to do so.

**{¶61}** Ball also challenges Reagan Tokes as applied to him, contending that Reagan Tokes violates his constitutional right to a trial by jury. In the past, we have held that certain as applied challenges to Reagan Tokes were not ripe for review. *See*, *e.g.*, *State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 11. However, the Supreme Court of Ohio recently released *State v. Maddox*, --- Ohio St.3d ---, 2022-Ohio-764, and determined that constitutional challenges to Reagan Tokes are ripe for review. Based on the holding in *Maddox*, we will address the constitutional issues under Reagan Tokes related to a jury trial.

**{¶62}** In reviewing the matter, we emphasize that statutes are presumed constitutional, and it is Ball's burden to demonstrate that the statute at issue is unconstitutional. *State v. Thompkins*, 75 Ohio St.3d 558, 1996-Ohio-264. Ball has presented no compelling authority undermining the constitutionality of Reagan Tokes.

{¶63} Notwithstanding this point, numerous Ohio Appellate Courts have already rejected challenges similar to Ball's. *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 18; *State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 25; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, ¶ 46 (en banc). We agree with the reasoning expressed by the other Ohio Appellate Courts cited herein and determine that Ball's "as applied" challenge in this case is unavailing.

{¶64} Accordingly, for all of these reasons, Ball has not established plain error. Thus, his sixth assignment of error is overruled.

{¶65} Based on the foregoing, the judgment of the Allen County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**