[Cite as *State v. Scott*, 2022-Ohio-2820.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**               **CASE NO.  1-21-51**

    **v.**

**KENNETH J. SCOTT,**                   **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Allen County Common Pleas Court
Trial Court No. CR2002 0402**

**Judgment Affirmed**

**Date of Decision:  August 15, 2022**

**APPEARANCES:**

    *Chima R. Ekeh* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, Kenneth J. Scott ("Scott"), appeals the October 15, 2021 judgment of the Allen County Court of Common Pleas, journalizing his conviction after pleading guilty to second-degree felonious assault with a firearm specification and having weapons while under disability, a third-degree felony, and sentencing him to an aggregate indefinite prison term of four to six years on the two offenses, consecutive to a three-year mandatory term on the firearm specification.

*Background*

{¶2} On December 17, 2020, Scott was charged in a two-count indictment with the offense of Count 1, felonious assault, in violation of R.C. 2903.11(A)(2)/(D)(1)(a) a second-degree felony, with a firearm specification pursuant to R.C. 2941.145(A); and Count 2, having weapons while under disability, in violation of R.C. 2923.13(A)(2)/(B), a third-degree felony. Scott pled not guilty to the charges at his arraignment.

{¶3} On the morning of trial, September 7, 2021, defense counsel filed a "Motion Suggesting the Defendant is Not Competent to Stand Trial," requesting the trial court to order an evaluation, pursuant to R.C. 2945.371, to determine Scott's competency to stand trial. (Doc. No. 62). The trial court then heard the motion, and after hearing arguments from both parties and the evidence presented, the trial court found Scott competent to stand trial.

**{¶4}** The case proceeded with the jury trial. The record reflects the prosecution presented testimony and a video recording of the November 1, 2020 incident depicting Scott's actions in brandishing and shooting a .22 caliber gun near the victim, who was Scott's first cousin, and the identification of the .22 caliber gun as being the same gun which the victim had actually sold to Scott about a week before. During an afternoon recess following the testimony of the prosecution's witnesses, the parties reached a plea agreement. The trial court recited on the record the terms of the plea agreement, under which Scott would be pleading guilty to the indictment and, in exchange, the prosecution would agree to make no sentencing recommendation. The trial court engaged in a Crim.R. 11 colloquy with Scott. When the trial court asked Scott if he had taken any medication within the last forty-eight hours, he responded that he had taken medication. The trial court followed up by attempting to inquire about the type of medication and whether the medication impacted Scott's ability to understand the plea proceedings, but Scott indicated that he did not know what medications he was taking. He then stated that he did not have a clear head at that time, and so the trial court indicated that it could not accept the guilty plea and that the trial would continue.

**{¶5}** Meanwhile, the trial court received information from the jail nurse about the medications being taken by Scott and the court provided counsel with that information before the court adjourned for the day. When the trial court reconvened

the next day, the record indicates that additional discussion had occurred regarding the medications Scott had been taking on a regular basis, the absence of any real side effects from those medications, and it was then indicated to the trial court by defense counsel that Scott had reported that he was "clear headed" and wished to enter the plea deal. (Tr. at 295). In addition to Scott and his counsel signing a "Negotiated Plea of Guilty" form, the trial court inquired of Scott prior to accepting the plea to ensure that he was "clear headed," and then found after engaging in the plea colloquy with Scott that his guilty plea was voluntary and that he had a full understanding of the consequences of his plea. (Tr. at 298-310). The trial court accepted Scott's guilty plea, entered findings of guilt according to the plea, and ordered a presentence investigation to be completed.

{¶6} On October 15, 2021, a sentencing hearing was held. The trial court found that the offenses in Counts 1 and 2 did not merge. The trial court imposed a prison term of four to six years on the second-degree felonious assault count, with a three-year mandatory prison term for the firearm specification to be served consecutive and prior to the indefinite term, and a prison term of eighteen months on the third-degree weapons under disability count to be served concurrently with the four-year term.

{¶7} Scott now appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION IN THAT HE WAS INCOMPETENT TO STAND TRIAL OR TO TAKE A PLEA.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN FAILING TO MERGE THE WEAPON UNDER DISABILITY WITH THE FELONIOUS ASSAULT.**

**ASSIGNMENT OF ERROR NO. 3**

**R.C. 2967.271 (THE REAGAN TOKES LAW) VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16, OF THE OHIO CONSTITUTION.**

*First Assignment of Error*

**{¶8}** In his first assignment of error, Scott argues that his right to due process was violated because the trial court erred by not finding him incompetent to stand trial or in later accepting his guilty plea.

*Applicable Law and Standard of Review*

**{¶9}** "[A] defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 32, citing *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, ¶ 28; R.C. 2945.37(G). In a

criminal proceeding, if the issue of a defendant's competency to stand trial is raised before the trial commences, the court shall hold a hearing on the issue. R.C. 2945.37(B). Additionally, R.C. 2945.371(A) provides that if the issue of competence to stand trial is raised, the court may order one or more evaluations of a defendant's present mental condition. The use of the word "may" in division (A) indicates that the decision whether to order a competency evaluation is a matter within the trial court's discretion. *State v. Matharu*, 2d Dist. Montgomery No. 26985, 2017-Ohio-8251, ¶ 14; *see State v. Bailey*, 90 Ohio App.3d 58, 67 (11th Dist. 1992).

{¶10} The test for determining a defendant's competency to stand trial is " ' "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." ' " *Neyland,* citing *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788 (1960), quoting the argument of then Solicitor General J. Lee Rankin. The constitutional standard for determining a defendant's competency to stand trial and his competency to enter a guilty plea are the same. *State v. Purdy*, 3d Dist. Auglaize No. 2-21-16, 2022-Ohio-1131, ¶ 8.

{¶11} We review a trial court's decision on competency for an abuse of discretion. *Id.* Additionally, when reviewing a trial court's decision, deference on

whether to conduct a competency hearing should be given to the trial court since it was able to see and hear what transpired in the courtroom. *Id.*

*Analysis*

{¶12} In this case, Scott contends the record contains sufficient indicia of incompetence to stand trial based on a video recording of the police interview with Scott and his uncooperative behavior with defense counsel in final trial preparation. Scott further contends that his disruptive behavior during the trial, and subsequently during the plea, should have caused the trial court to sua sponte conduct further inquiry by an additional hearing or order a competency evaluation prior to proceeding with the trial or taking Scott's plea.

{¶13} The record reflects that defense counsel filed the motion questioning Scott's competency to stand trial after Scott, who appeared agitated, began acting erratically and refusing to cooperate with counsel when counsel went to visit him at the jail three days before the trial was to start, and also because Scott had originally claimed to be hearing voices at the time of the November 2020 police interview. However, defense counsel also recounted for the trial court the history of his representation of Scott over the prior eight months and counsel noted that at no time during that representation did counsel feel Scott might be incompetent. Counsel specifically noted that he was aware Scott had some mental health issues, but confirmed that during the course of the representation Scott had never acted in a

way that made counsel question his sanity or his ability to assist in the defense of his case (i.e., Scott always knew who counsel was, understood the role of the court, and what the trial was).

{¶14} The State then introduced into evidence recordings of Scott's telephone calls to his girlfriend from the jail that had been made the preceding day. The State argued those recorded conversations show that Scott indicated a clear understanding of the nature and objectives of the court proceedings and an ability to assist in his defense.

{¶15} Then, upon further inquiry by the trial court, defense counsel confirmed that he had always been able to discuss the case with Scott, had provided and reviewed discovery with him, and had been able to talk to him about trial strategies and plea deals. When asked whether Scott had anything to tell the court, Scott said that he was going to remain silent.

{¶16} In reaching the ultimate finding that Scott was competent to stand trial, the trial court judge noted that she had interacted with Scott in court numerous times throughout the pendency of his case and had observed his ability to articulate things and to understand issues relating to the case, as well as noted the course of defense counsel's contact with Scott. Additionally, the trial court noted that the jail phone call recordings from the day before reflected that Scott understood the role of defense counsel, as well as the roles of the prosecutor and the court, that he

understood the types of punishments he might receive, and that he demonstrated an understanding of the possible defenses that he may have. The trial court found that Scott's "lashing out" type of behavior with defense counsel three days before the start of the trial was not an indication that Scott was incompetent to stand trial, particularly given that he had never previously given anyone a reason to question his competency until essentially the last minute, prior to the commencement of the trial. (Tr. at 19-20).

{¶17} In addition, the record reflects no significant change in Scott's behavior after the start of the trial that would create doubt as to whether he was incompetent as constitutionally defined. The record further reflects the trial court judge, based on, again, listening to the recorded phone calls, indicated that Scott's behavior was a result of his temper, not a mental problem. The record also reflects that Scott understood the nature of the ultimate plea proceedings.

{¶18} Based on our review, we conclude the record does not show any abuse of discretion on the part of the trial court with respect to the determination of Scott's competency to stand trial or with respect to the taking of his plea with respect thereto. Scott's first assignment of error is overruled.

*Second Assignment of Error*

{¶19} In his second assignment of error, Scott claims the trial court erred in failing to merge the conviction for weapons under disability in Count 2 with his

conviction for felonious assault in Count 1. Specifically, Scott argues that the two offenses were allied offenses of similar import subject to merger pursuant to R.C. 2941.25. Scott did not raise this argument in the trial court and has, therefore, forfeited all but plain error review on appeal. *See* Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3; *State v. Prince*, 3d Dist. Allen No. 1-21-14, 2021-Ohio-4475, ¶ 9. "[A] forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Rogers*. Regarding the issue of merger/allied offenses, the accused must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶20} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However, "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts

-10-

for all such offenses, and the defendant may be convicted of all of them."  R.C. 2941.25(B).

**{¶21}** "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses:"

> **(1)   Were the offenses dissimilar in import or significance?**
> **(2)   Were they committed separately? and**
> **(3)   Were they committed with separate animus or motivation?**
> **An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.**

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 31.  *Prince* at ¶ 10.

**{¶22}** Other appellate districts have held that having weapons while under disability and felonious assault generally do not merge, because the charges do not involve the same animus.  *See, e.g., State v. Frazier*, 2d Dist. Clark No. 2021-CA-46, 2021-Ohio-4155 and *State v. Elder*, 5th Dist. Richland No. 2011-CA-00058, 2011-Ohio-4438.  As stated by the Fifth District Court of Appeals in *Elder*, " 'the animus of having weapons under disability is making a conscious choice to possess a weapon.  Felonious assault requires a conscious choice to attack someone using a weapon.' "  *Frazier* at ¶ 22, quoting *Elder* at ¶ 7.

**{¶23}** Citing to the *Ruff* case, Scott's defense counsel's sentencing memorandum summarily indicated that the offenses in this case do not merge.  The trial court was satisfied upon the facts that there was no merger of the two offenses

-11-

pursuant to *Ruff* and R.C. 2941.25. In reviewing the trial court's decision, to the extent the record reflects facts relevant to the issue (i.e. the transcript of the aborted trial), the factual circumstances do not support the merger of Scott's felonious assault and having weapons while under disability offenses. The State's evidence established that Scott had ownership and possession of the .22 caliber firearm before he exited his trailer, and that he retrieved it to commit the acts forming the basis of the felonious assault. Additionally, during a consented search of the premises and having been told by Scott that there was a gun safe in the trailer, the police recovered a second gun inside the gun safe indicating that Scott constructively possessed that second gun. Therefore, Scott cannot demonstrate that there was plain error in convicting him of both Counts 1 and 2 at sentencing.

{¶24} The second assignment of error is overruled.

*Third Assignment of Error*

{¶25} In his third assignment of error, Scott contends that the indefinite sentence of incarceration imposed on Count 1 pursuant to the Reagan Tokes law is unconstitutional as a violation of his due process rights.

{¶26} We first note that Scott did not challenge the constitutionality of the Reagan Tokes law before the trial court. For this reason, we apply the plain-error standard of review in this case. *Accord State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, ¶ 57. "An error qualifies as 'plain error' only if it is obvious and

but for the error, the outcome of the proceeding clearly would have been otherwise." *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 8, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 245, 2002-Ohio-2126, ¶ 32.

**{¶27}** As this Court also noted in *Ball*, challenges to the Reagan Tokes law do not present a matter of first impression in this Court. *Ball* at ¶ 59. "Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not * * * infringe on defendants' due process rights." *Id.* citing *e.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21.

**{¶28}** On the basis of *Ball* and our prior precedent, this Court finds no merit to Scott's contention. The third assignment of error is overruled.

**{¶29}** Accordingly, the judgment of the Allen County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**