[Cite as *State v. Rentschler*, 2023-Ohio-3009.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                            CASE NO. 9-22-50

     v.

SHANE ALLEN RENTSCHLER,               O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 20-CR-151

Judgment Affirmed

Date of Decision: August 28, 2023

APPEARANCES:

     *Dustin M. Blake* for Appellant

     *Martha Schultes* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Shane Allen Rentschler ("Rentschler"), appeals the August 31, 2022 judgment of conviction and sentence entered against him in the Marion County Court of Common Pleas, following a jury trial in which Rentschler was found guilty of Possession of Fentanyl. For the reasons that follow, we affirm.

*Procedural History*

{¶2} This case originated on May 20, 2020, when the Marion County Grand Jury returned a single-count indictment charging Renstchler with Trafficking in Heroin, a second-degree felony. On May 26, 2020, an arraignment was held and Rentschler entered an initial plea of not guilty.

{¶3} On June 10, 2020, a two-count superseding indictment was filed, charging Rentschler in Count 1 with Trafficking in Heroin, a second-degree felony, and in Count 2 with Possession of Heroin, also a second-degree felony. An arraignment on that indictment was held on June 15, 2020, and Rentschler again pled not guilty.

{¶4} On August 5, 2020, a second superseding indictment was filed, charging Rentschler in Count 1 with Trafficking in Fentanyl, a first-degree felony in violation of R.C. 2925.03(A)(2) and (C)(9), and in Count 2 with Possession of Fentanyl, a first-degree felony in violation of R.C. 2925.11(A) and (C)(11). On

-2-

August 10, 2020, Rentschler was arraigned on the second superseding indictment and a not guilty plea was entered.

{¶5} On August 16, 2022, a jury trial commenced as to the charges in the August 5, 2020 second superseding indictment. On August 18, 2022, the jury returned verdicts finding Rentschler not guilty on Count 1 but guilty on Count 2.

{¶6} On August 31, 2022, a sentencing hearing was held. Rentschler was sentenced to a minimum prison term of eleven years, with a potential maximum prison term of sixteen and a half years, to be served consecutively to a prison term to which Rentschler was sentenced in a prior Marion County case.

{¶7} On September 29, 2022, Rentschler filed the instant appeal, in which he raises seven assignments of error for our review.

### First Assignment of Error

**Appellant's conviction must be vacated because the State engaged in prosecutorial misconduct during the trial which violated Appellant's right to a fair trial memorialized under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution.**

### Second Assignment of Error

**The trial court erred when it admitted irrelevant, prejudicial and highly inflammatory evidence during Appellant's jury trial. The admission of the same undermined Appellant's right to a fair trial memorialized under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Article I, Sections 1, 10, and 16 of the Ohio Constitution, and further violated Ohio Evid.R. 401, 402, 403, and 404.**

**Third Assignment of Error**

**Appellant's first trial counsel provided ineffective assistance when he failed to communicate the State's offer to resolve this case by allowing the Defendant to plead guilty to a reduced charge of a felony of the second degree as a lesser-included offense of one of the counts in the indictment. This violated Appellant's right to the assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution.**

**Fourth Assignment of Error**

**The court's unlawful jury instructions undermined Appellant's right to a fair trial and his right to a unanimous jury verdict under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, Article I, Sections 1, 10, and 16 of the Ohio Constitution, R.C. 2945.10(G), Crim.R. 30, and Crim.R. 31(A).**

**Fifth Assignment of Error**

**The trial court plainly erred when it sentenced Appellant on count two to an indeterminate prison term imposed pursuant to the statutory scheme set forth in R.C. 2929.14(A)(1)(a), R.C. 2929.144(B)(1), R.C. 2967.271(C), and R.C. 2967.271(D) ("Reagan Tokes Act") which violates: Appellant's right to a jury trial under Section 10, Article I, Ohio Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution; the separation of powers principles in violation of Section 1, Article IV, Ohio Constitution; Appellant's right to due process of law under the federal and Ohio constitutions because it fails to notify him with adequate notice and a fair hearing.**

**Sixth Assignment of Error**

**Appellant's conviction for possession of fentanyl is not supported by the sufficiency of the evidence.**

**Seventh Assignment of Error**

**The cumulative effect of the errors advanced in this brief resulted in a violation of Appellant's right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution and thus entitles him to a new trial.**

{¶8} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Sixth Assignment of Error*

{¶9} In the sixth assignment of error, Rentschler argues that his conviction for possessing fentanyl is not based on sufficient evidence.

{¶10} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6th Ed.1990). See, also, Crim.R. 29. Sufficiency of the evidence is a test of adequacy rather than of credibility or weight of the evidence. *Thompkins*, at 386-387.

{¶11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio

St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶12} Here, Rentschler was convicted of possession in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance ***." The indictment on which Rentschler was tried in this case further specified that the fentanyl-related compound at issue weighed equal to or more than 20 grams but less than 50 grams, pursuant to R.C. 2925.11(C)(11)(e).

{¶13} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶14} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26, 13-13-04, 2013-Ohio-4975, ¶ 25. "A

person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *Hankerson* at 91.

{¶15} In the instant case, the prosecution presented the testimony of five witnesses at trial, in addition to admitting several exhibits.

{¶16} The prosecution's first witness was James Peterson, a parole officer for the State of Ohio. Peterson testified that he knew Rentschler from having supervised him. Peterson identified the defendant in the courtroom as being Shane Rentschler. On May 14, 2020, Peterson received a tip from the MARMET Drug Task Force that related to Rentschler and his documented address of 1178 Fairwood Avenue in Marion, Ohio. As a result, Peterson and his partner, Officer Chase Bass, went to 1178 Fairwood Avenue. After Rentschler answered the officers' knock at the door, he was then secured outside in handcuffs, for officers' safety. The officers then entered the house, where they found that Rentschler's wife was present, as well as two or three young children. Peterson and Bass began a search of the home, starting in the master bedroom. Upon noticing a few items in the bedroom, they requested that police officers from MARMET respond to assist with the search. Peterson went back outside and asked Rentschler about a bag of suspected

marijuana found in the bedroom in a duffle bag, and Rentschler confirmed it was his, saying it was for personal use.

**{¶17}** The state's second witness was Chris Adkins, a major with the Marion Police Department and the supervising officer in charge of the MARMET task force. On May 14, 2020, Adkins went to 1178 Fairwood Avenue to assist the parole officers. When Adkins arrived, Detectives Baldridge and Marburger, two officers assigned to the task force, were already present and were standing outside with Rentschler. Adkins went inside and began assisting in the search of the residence. Adkins was then alerted by Parole Officer Bass that Bass had located a digital scale in a closet where the furnace and hot water tank were located. Adkins then decided to pull out the furnace filter because it is common to locate narcotics inside furnaces. As he began pulling out the filter, he noticed a small plastic bag containing suspected heroin or fentanyl (State's Exhibit 7) that was located right in front of him on one of the furnace pipes. Once the suspected narcotics were found, Major Adkins decided that a search warrant should be obtained in order to search the rest of the house.

**{¶18}** Detective Matt Baldridge of the Marion Police Department testified that he was assigned to the MARMET Drug Task Force, which is a county-wide task force focused on investigating drug crimes in Marion County. On May 14, 2020, Baldridge and his task force colleague, Detective Marburger, went to 1178

Fairwood Avenue in Marion to assist the parole officers who were there. Upon arriving, Baldridge stood outside with Rentschler, who had been handcuffed while the parole officers searched the home. Detective Baldridge subsequently went inside the house, where he was shown a plastic bag of suspected fentanyl that had been found. Baldridge testified that he then spoke to Rentschler about the suspected fentanyl that was found in the house, and Rentschler admitted that the drugs were his, telling Baldridge that the substance was heroin. Detective Baldridge also testified that the street value of fentanyl is approximately one hundred dollars per gram.

{¶19} Detective Aaron Marburger of the Marion County Sheriff's Office testified that in May of 2020, he was assigned to the MARMET Drug Task Force. On May 14, 2020, he and Detective Baldridge were called to 1178 Fairwood Avenue, in Marion County, in order to assist parole officers with a search of a residence. Upon arriving, Marburger and Baldridge waited outside the house while the other officers were inside. Marburger and Baldridge were subsequently made aware that Major Adkins had found something in the residence, which Detective Baldridge then walked inside to look at. When Detective Baldridge came back outside, he Mirandized Rentschler and then asked Rentschler a couple questions about what had been found. Baldridge asked Rentschler if he was aware of the bag and the scales that had been found, and Rentschler first stated that he knew nothing

about the items. Detective Baldridge then showed Rentschler a photo on Baldridge's phone and Rentschler admitted that the drugs were his.

{¶20} The state's final witness was Kelsey Degen, a forensic scientist at the Ohio Bureau of Criminal Investigation lab in Bowling Green. Degen, an expert in the field of scientific analysis of controlled substances, testified that she had weighed and analyzed the substance in State's Exhibit 7. Degen determined that the substance weighed 37.52 grams, plus or minus .04 grams, and through the laboratory analysis that she performed, Degen identified the substance in State's Exhibit 7 as fentanyl.

{¶21} Reviewing that evidence in a light most favorable to the prosecution, we conclude the jury could have rationally found beyond a reasonable doubt that Rentschler constructively possessed the fentanyl at issue, and that the substance weighed over 20 grams as alleged in the indictment. This is particularly true given the evidence that Rentschler admitted the drugs were his.

{¶22} The sixth assignment of error is overruled.

*First Assignment of Error*

{¶23} In the first assignment of error, Rentschler asserts that his conviction must be reversed due to prosecutorial misconduct. Specifically, Rentschler argues that prosecutorial misconduct occurred through eliciting unlawful opinion testimony in the direct-examination of two witnesses; by failing to comply with the

discovery requirements of Crim.R. 16(K) with regard to those two witnesses; and through statements made in closing argument concerning evidence of the "tip" received by law enforcement that led to the search of Rentschler's home.

{¶24} "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400 (1987). Prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Keenan*, 66 Ohio St. 3d 402, 405, 613 N.E.2d 203, 206 (1993). If established, misconduct on the part of the prosecution may violate a defendant's due process rights; therefore, the "touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The effect of any misconduct must be considered in light of the whole trial. *State v. Durr*, 58 Ohio St.3d 86, 94, 568 N.E.2d 674 (1991).

{¶25} In the instant case, Rentschler first argues that the prosecution engaged in misconduct during the direct examinations of Major Chris Adkins and Detective Matt Baldridge.

{¶26} As to the claims regarding the direct-exam testimony of Major Adkins, Rentschler takes issue with the following portion of Adkins' testimony:

Q    Where was your search area?

A     I believe I started in the hallway, the bedroom area there and I was alerted by P.O. Bass that he had located an item in the furnace area, the closet.

Q     And that particular item was what?

A     A digital scale.

Q     In your experience working with MARMET Drug Task Force for nine years plus now?

A     Yes.

Q     What is a digital scale used for?

A     Obviously, it can be used for food. But given the location where it was at, not in the kitchen, we commonly find those associated with narcotics.

Q     And then I'm sorry, where did you say that this was found?

A     It was in the closet just off the bedroom near the bathroom where the furnace and hot water tank were located. So if you can call it a closet or – or a room.

Q     Based on having been alerted to that, what did you do?

A     Moved the door. Start to pull the furnace filter out cause it's common for us to locate narcotics inside furnaces and different areas. And as I started to pull the furnace filter out, basically right in front of me was a small plastic bag on the pipe in for the furnace.

(8/16/22 Tr., 278).

{¶27} As to the claims regarding the direct-exam testimony of Detective Baldridge, Rentschler takes issue with the following portion of Baldridge's testimony regarding the fentanyl found in Rentschler's home:

-12-

Q Do you recall what the weight of those suspected drugs was?

A I think it was approximately 33 grams.

Q Based on your training and experience, what would be the street value of roughly 33 grams of fentanyl?

A It'd be about – give or take about a hundred dollars a gram, so around 3300 dollars.

Q Based on your training and experience, would someone that only uses drugs purchase 33 grams of anything?

A No, ma'am.

Q Based on your training and experience, when have you seen a person have 33 grams of drugs?

A When they're trafficking.

Q Would a person that solely uses drugs have, let's say, 33 grams of fentanyl?

A No.

Q Would a person that solely uses drugs leave behind 33 grams of fentanyl?

    MR. BLAKE [defense counsel]: Objection, Your Honor. Speculation.

    THE COURT: Sustained.

Q Based on your training and experience, have you ever seen a user leave behind 33 grams of fentanyl?

A No.

(8/16/22 Tr., 322-323).

**{¶28}** Rentschler argues on appeal that the above-quoted testimony of Major Adkins and Detective Baldridge constituted "unlawful profile opinion testimony."

**{¶29}** In analyzing this claim, we first note that there was no objection at trial to any portion of Adkins' testimony with which Rentschler takes issue on appeal, and just a single objection to one question during Baldridge's testimony, an objection that was sustained. Thus, as to the testimony at issue, Rentschler's failure to object forfeited all but plain error. See, *e.g.*, *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 171. To establish plain error under Crim.R. 52(B), the party asserting error must demonstrate that an error occurred, that the error was plain, and that the error affected his substantial rights. *State v. Bond*, 170 Ohio St.3d 316, 2022-Ohio-4150, ¶ 17.

**{¶30}** Upon review of the testimony at issue in the context of the overall record, we find that the testimony – and therefore the conduct of the prosecution in eliciting the testimony – falls well short of plain error.

**{¶31}** Evid.R. 701 governs the admissibility of opinion testimony from lay witnesses, and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

**{¶32}** It is well established that police officers may offer lay opinion testimony pursuant to Evid.R. 701 if the testimony is based on the officers' perceptions through experience. *State v. Duncan*, 3d Dist. Allen No. 1-19-75, 2020-Ohio-3916, ¶ 9. Additionally, appellate courts throughout Ohio have repeatedly held that drug trafficking may be proven by circumstantial evidence, including evidence of items such as plastic baggies, digital scales, large sums of money, and the street value of the drugs at issue. See, *e.g.*, *State v. Lopez-Olmedo*, 9th Dist. Lorain No. 21CA011745, 2022-Ohio-2817, ¶ 33, *appeal not allowed*, 168 Ohio St.3d 1458, 2022-Ohio-4201.

**{¶33}** In this case, we conclude that the testimony of Major Adkins and Detective Baldridge was properly admitted lay opinion testimony pursuant to Evid.R. 701, particularly as Rentschler was on trial for both trafficking in fentanyl and possession of fentanyl. Rentschler has failed to establish the existence of plain error with regard to his claims, particularly as he was ultimately acquitted of the trafficking charge to which the testimony related.

**{¶34}** Rentschler next asserts that prosecutorial misconduct occurred because the state failed to provide the defense with "expert witness reports" relating to the complained-of testimony given by Major Adkins and Detective Baldridge, in alleged non-compliance with Crim.R. 16(K).

**{¶35}** Crim.R. 16(K) governs the discovery of expert witness reports, and provides:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**{¶36}** The record here reflects that the prosecution never requested that the trial court qualify either Adkins or Baldridge as an expert witness. As this part of Rentschler's prosecutorial misconduct claim relates to expert witness requirements and Adkins and Baldridge did not testify as experts, Rentschler's assertion that there was non-compliance with Crim.R. 16(K) lacks merit. See *State v. Morris*, 3d Dist. Henry No. 7-21-05, 2022-Ohio-3608, ¶ 20, *appeal allowed on other grounds*, 169 Ohio St.3d 1140, 2023-Ohio-381.

**{¶37}** Finally, Rentschler argues that the state engaged in misconduct during closing argument when the prosecutor referenced the "tip" received by law enforcement that led to the search of Rentschler's home.

**{¶38}** "A prosecutor is entitled *** to 'wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 274, quoting *State v.*

*Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). "The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant." *State v. Manley*, 3d Dist. Allen No. 1-11-04, 2011-Ohio-5082, ¶ 14.

**{¶39}** "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (1995). "We evaluate the allegedly improper statements in the context of the entire trial." *State v. Klein*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, ¶ 60, citing *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001).

**{¶40}** As noted above, the first witness called at trial was parole officer James Peterson. After Peterson took the stand and identified Rentschler, the following direct examination occurred:

Q  I want to turn your attention back to May 14th of 2020. Remember that date?

A  Yes.

Q  Okay. Did you have reason to go to an address of 1178 Fairwood Avenue here in Marion County, Ohio?

A  Yes, I did.

Q    And generally speaking, what was the reason for going to that address?

A    I received a tip from MARMET Drug Task Force –

MR. BLAKE [defense counsel]:    Objection, Your Honor. Hearsay.

THE COURT:  As to – as to receiving a tip and who it was from, overruled.  The content of the tip is different.  But he hasn't testified as to that.  So, overruled.

A    I received a tip from MARMET Drug – Drug Task Force that Mr. Rentschler –

MR. BLAKE:  Objection, Your Honor.

A    --was –

MR. BLAKE:  He's going there.

THE COURT:  Yeah.  You want to clarify your question, counsel?  I'm going to sustain that objection as to the –

MR. SCOTT:  Okay.

THE COURT:  Unless you want to make an argument as to why it's not hearsay.

MR. SCOTT:  Your Honor, I would – I would suggest that it's not hearsay because it's not meant for the truth of the matter asserted but more what he does next based on that information.

THE COURT:  Well, I think there's a way to – to get to that without – without the specific content of what the tip was.

MR. SCOTT:  Okay.

THE COURT:  So I'm going to sustain the objection.

Case No. 9-22-50

(8/16/22 Tr., 262-264).

{¶41} Immediately following that exchange on the record, the prosecutor then elicited from the witness the fact that Peterson "received some information from the MARMET Drug Task Force" relating to Rentschler and his residence at 1178 Fairwood and that, as a result, Peterson and his partner went to that location. (8/16/22 Tr., 264-265).

{¶42} Subsequently, during closing argument, defense counsel made the following statements to the jury:

> There's no prior investigation into Shane. Whatsoever. Several officers got up here and said they had a tip. And I should just talk about this for a moment. They get a tip. What's the tip? Who's it from? Who came in here and told you what that tip was about?

(8/18/22 Tr., 30).

{¶43} Defense counsel then almost immediately went on to again argue that the police failed to do any investigation or surveillance of Rentschler before going to search his house. (8/18/22 Tr., 31).

{¶44} Then, in rebuttal closing argument, the prosecutor made the following statements:

> [The defense] also talks about the things that [the police] could have done. Now, they're responding to a tip. It's not hard for you to infer that that tip was that there's drugs in that house. That is not a – (inaudible) – because of what they go and what they look for. It's pretty clear what they were looking for when they got there.

> So the fact that they didn't do trash pulls on a tip that they had just received, or the fact that they didn't do surveillance, or CI buys, or wiretaps is not a big deal. Because if you do all of that there's a possibility that what you've been tipped to have been there is gone by the time that you go searching for it. So you act on it when the tip is ripe.

(8/18/22 Tr., 42-43).

{¶45} On appeal, Rentschler argues that the above-quoted comments of the prosecutor in final closing argument amount to prejudicial misconduct because the comments touched upon the specific content of the tip, which the trial court had ruled was inadmissible in evidence. Rentschler also claims that the state's argument was impermissible in that the state was asserting that the tip was substantive proof of Rentschler's guilt. Upon consideration, we find that Rentschler's claims lack merit for several reasons.

{¶46} First of all, we note that no objection at trial was made to the portion of the prosecutor's closing argument with which Rentschler now assigns error. Accordingly, we review the prosecution's statements only for plain error. *State v. Lane*, 3d Dist. Allen No. 1-21-33, 2022-Ohio-3775, ¶ 59. Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the error at issue, the outcome of the proceeding would have been otherwise. *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, ¶¶ 35-36.

{¶47} While Rentschler asserts that the prosecution impermissibly argued that the tip was substantive proof of Rentschler's guilt, we disagree. When the

prosecutor's statements are reviewed in context, the record reflects that the prosecutor's argument regarding the tip was properly proffered as rebuttal to the defense argument concerning the lack of an actual investigation prior to law enforcement searching Rentschler's house.

{¶48} Moreover, to the extent that there was anything arguably improper in the prosecutor's comments, the record reflects that the defense opened the door to the prosecutor's rebuttal argument regarding the tip and the reason for the lack of investigation on the part of law enforcement. We also note that the trial court twice instructed the jury that the closing arguments of counsel were not evidence.

{¶49} After examining the prosecutor's statements under the four factors set forth above, we do not find that the statements constituted plain error. Rentschler has failed to demonstrate that the prosecutor's comments affected Rentschler's substantial rights or that, but for the statements, the jury would have found Rentschler not guilty. As detailed in our discussion of Rentschler's sixth assignment of error, *supra*, the prosecution presented more than ample other evidence at trial upon which the jury could find Rentschler guilty of possessing fentanyl, including but not limited to Rentschler's admission that the fentanyl was his.

{¶50} Thus, for all of those reasons, Rentschler has failed to demonstrate reversible prosecutorial misconduct with regard to closing arguments.

{¶51} The first assignment of error is overruled.

*Second Assignment of Error*

**{¶52}** In the second assignment of error, Rentschler asserts that the trial court erred in admitting evidence that was irrelevant, prejudicial, and highly inflammatory, and which Rentschler claims was admitted in violation of Evid.R. 404(B).

**{¶53}** Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶54}** While relevant evidence is generally admissible pursuant to Evid.R. 402, Evid.R. 403 mandates exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶55}** Pursuant to Evid.R. 404(B), evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that the person acted in accordance with that character, however such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56,

quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23.

**{¶56}** In this assignment of error, Rentschler first argues that a reference by a prosecution witness to the fact Rentschler was on parole constituted inadmissible and highly prejudicial evidence in violation of Evid.R. 404(B).

**{¶57}** As previously noted, the state's first witness at trial was James Peterson. Upon taking the stand, Peterson testified that he was a parole officer with the State of Ohio, having been in that position for about five years. Peterson was then asked, "[d]o you know a person by the name of Shane Rentschler?", and Peterson answered that he did. (8/16/22 Tr., 261). Peterson was then asked how he knew Rentschler, and he answered "I have supervised Shane Rentschler." (*Id.*). Defense counsel lodged an objection, which was overruled. Peterson then identified the defendant in the courtroom as being Shane Rentschler, and the direct examination moved on to questioning about the events of May 14, 2020 and the search of Rentschler's home.

**{¶58}** Contrary to Rentschler's claims on appeal, the parole officer's testimony that he knew Rentschler from having supervised him was not evidence of a specific prior crime, wrong, or act that falls under the dictates of Evid. R. 404(B). The Ohio Supreme Court has stated that Evid.R. 404(B) "prohibits the use of evidence related to *other acts of the defendant* to show his character or propensity

to commit crimes ***." (Emphasis added.) *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, ¶ 3. Here, Peterson's testimony that he had "supervised" Rentschler, with no elaboration, is not "other acts" evidence as envisioned by Evid.R. 404(B). Peterson's testimony did not detail any specific prior criminal activity on Rentschler's part as prohibited under the rule. *See State v. Fairley*, 3d Dist. Hancock No. 5-03-41, 2004-Ohio-2616, ¶ 31. Rather, the passing reference to Rentschler's supervision was offered only to establish the basis of Peterson's knowledge of the defendant and to then also explain why Peterson and his partner went to Rentschler's home that day. Thus, there was no evidence presented of an "act" by Rentschler, or any details about that act, that would have implicated Evid.R. 404(B).

{¶59} Nonetheless, the trial court also gave a limiting instruction advising that evidence of the commission of wrong acts other than the offenses with which the defendant was charged was not to be considered to prove the character of the defendant in order to show that he acted in conformity with that character. The jury was further instructed that it does not follow from the defendant's past acts that he committed the particular crimes charged in the instant case. This court presumes that the jury followed those instructions. *State v. Gardner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).

{¶60} Ultimately, there is nothing in the record to suggest that Peterson's testimony that he "supervised" Rentschler served to confuse, mislead, or inflame

the jury, particularly in light of the testimony's very limited nature, the extremely neutral phrasing used by the witness in explaining how he knew Rentschler, the cautionary instructions given by the trial court, and the ample evidence of Rentschler's guilt. As such, Rentschler has failed to establish that any material, unfair prejudice resulted from the admission of Peterson's testimony and therefore Rentschler's claim lacks merit.

{¶61} Rentschler also argues in the second assignment of error that the trial court erred in admitting the opinion testimony of Major Chris Adkins and Detective Matt Baldridge, which is the same testimony Rentschler challenged as prosecutorial misconduct in the first assignment of error. Again, as explained in our analysis of that assignment of error, *supra*, the testimony given by Adkins and Baldridge was properly admitted as lay opinion testimony pursuant to Evid.R. 701. Additional review reflects that there is no merit to Rentschler's claim that the testimony was irrelevant or inflammatory.

{¶62} The second assignment of error is overruled.

*Third Assignment of Error*

{¶63} In his third assignment of error, Rentschler argues that he was denied the effective assistance of counsel because his initial trial counsel failed to communicate to Rentschler a plea offer made by the State of Ohio.

{¶64} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62.  To prove ineffective assistance of counsel, one must establish that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Prejudice exists if there is "a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶65} In *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), the United States Supreme Court held that trial counsel may be ineffective if they fail to communicate the terms of a plea offer to a defendant.  Pursuant to *Frye*, a criminal defense attorney has a duty to inform the defendant of formal prosecution offers that may be favorable to the defendant. *Id.*, at 135.  To show prejudice where a plea offer has lapsed or been rejected because of counsel's failure to communicate the same, defendants must demonstrate a reasonable probability both that they would have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the negotiated plea would have

been entered without the prosecution's revoking it or the trial court's refusing to accept it. *Id.*

**{¶66}** In support of the instant assignment of error, Rentschler relies solely upon a comment made by his trial counsel at the sentencing hearing as counsel was arguing on Rentschler's behalf in mitigation of sentence. At that time, pursuant to suggesting that Rentschler should receive a prison sentence in the range of seven or eight years, counsel stated:

> But in every occasion that I talked with him I talked with [the prosecutor] Mr. Scott and I understand sometimes, I've been doing this for a minute, and the Court knows as well, and you get involved in a case and it's old, there are things that are kind of set in place and I work pretty hard with Mr. Scott to try to resolve matters. And Mr. Scott had indicated to me that there was some sort of an offer with regard to pleading to the F2 that that – if the motion hearing was had, that would go away. My client did –didn't seem to be aware of that. I came to a pretrial and indicated that my discussions with Mr. Rentschler he would agree to that, and at a final pretrial they'd agree to resolving for an F2.

(8/31/22 Tr., 9-10).

**{¶67}** Upon review, we cannot find that counsel's vague reference at sentencing to "some sort of an offer" sufficiently establishes that a formal plea offer to a lesser included offense was made by the prosecution and that the offer then lapsed or was rejected under circumstances that render *Missouri v. Frye*, *supra*, applicable here. Moreover, even assuming that Rentschler's prior trial counsel engaged in deficient performance by not communicating a plea offer to his client,

the record lacks evidence of a reasonable probability that Rentschler would have accepted the plea offer and that the negotiated plea would have been ultimately accepted by the trial court. Any evidence necessary to establish those prongs of the *Missouri v. Frye* standard would be evidence outside the record and therefore Rentschler's claim fails on direct appeal. *See State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983).

{¶68} The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶69} In the fourth assignment of error, Rentschler asserts that the trial court erred in several ways with respect to jury instructions.

{¶70} "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883, ¶ 72. Thus, we generally review alleged errors in jury instructions for an abuse of discretion. *State v. Blanton*, 3d Dist. Seneca No. 9-15-07, 2015-Ohio-4620, ¶ 55, citing *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). We note also that "the rule regarding appellate review of jury instructions is that a sole instruction must be viewed within context of the whole set

rather than in isolation." *State v. Moore*, 3d Dist. Putnam No. 12-06-18, 2007-Ohio-5905, ¶ 26.

{¶71} Here, Rentschler argues first that the trial court erred by including an instruction on complicity in the charge to the jury. Rentschler asserts that there was no evidence presented at trial that supported the trial court's decision to instruct the jury as to complicity.

{¶72} Under the principle of complicity or accomplice liability, an individual may be found guilty if he solicits, aids, abets or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense. R.C. 2923.03. It is well settled law that a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in committing the crime, even though the indictment is stated in terms of the principal offense and does not mention complicity. *State v. Herring*, 94 Ohio St.3d 246, 251, 762 N.E.2d 940 (2002). See, also, R.C. 2923.03(F). Additionally, in order to convict a defendant as an accomplice, the prosecution need not prove who the principal offender was but only that there was a principal offender. *State v. Lamarr*, 3d Dist. Logan No. 8-04-39, 2005-Ohio-6030, ¶ 8, citing *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976). Where the state presents evidence that the defendant acted in concert with another person to commit a crime, a jury instruction

on complicity is proper. *State v. Jones*, 1st Dist. Hamilton No. C-170358, 2018-Ohio-4754, ¶ 43.

**{¶73}** In this case, the record reflects that, after all the evidence was in, the trial court informed counsel of the court's intention to give a complicity instruction. Defense counsel objected on the basis that "[t]here's not been any evidence of that and it would serve to confuse the jury." (8/18/22 Tr., 3). The trial court responded by saying:

> The Court's view in this case is that there was testimony elicited that the officers had a second suspect that they – some might say threatened to arrest in this case. Namely, the defendant's wife. And that the defendant, in essence, confessed to this crime because he didn't want to see his wife arrested. But I think from that testimony the jury could also find that they were acting together because they both lived in the house. And so the Court feels that the aider and abettor instruction is appropriate given these facts. ***

(8/18/22 Tr., 4).

**{¶74}** The trial court then ultimately gave the following instruction to the jury as part of the overall charge:

> The defendant may be convicted as an aider and abettor or a complicitor.
>
> A complicitor is one who knowingly solicits or procures another to commit the offense.
>
> Solicit means to ask, to in – influence, to invite, to tempt, to lead on, to bring the pressure to bear.
>
> Procure means to obtain, induce, bring about, motivate.

An aider and abettor is one who aids, assists, or encourages another to commit a crime and participates in the commission of the offense by some act, word, or gesture. Aid means to help, assist, or strengthen.

The knowledge that a crime is being committed and the mere presence of an accused at the scene of a crime is not sufficient to prove in and of itself that the accused was an aider and an abettor. The defendant's mere association with the principal offender is not enough to prove the defendant is an aider and abettor. Before you can find the defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal offender in the commission of the offense and if the defendant shared in the criminal intent of the principal offender. Such intent may be inferred from the circumstances surrounding the offense including but not limited to – to presence, companionship, and conduct before and after the offense was committed. The mere presence at the scene of the offense is not sufficient to prove in and of itself that the defendant was [*sic*] aider and abettor.

(8/18/22 Tr., 51-52).

**{¶75}** Upon review, the record reflects that the state tried this case on the theory that Rentschler was the principal offender and not on a complicity theory. However, the circumstantial evidence of potential complicity between Rentschler and his wife was not so remote as to render the inclusion of the complicity instruction prejudicial error, particularly as both adults appeared to be living in the home, both were present at the time the drugs were discovered, the drugs were found in a location that was not specific to just one of the spouses, and – as the trial court noted – there were references in evidence to the fact that Rentschler's wife could have also been charged with the same crime. Thus, while the complicity instruction

may not have been strictly warranted, we cannot say that its inclusion in the general charge was an abuse of discretion.

**{¶76}** Rentschler next argues that the trial court erred in the giving of the complicity instruction by failing to include information in the instruction about the culpable mental state required for complicity.

**{¶77}** In analyzing this claim, we note first that while Rentschler objected at trial to the applicability of the complicity instruction generally, no objection was lodged as to the form or substance of the complicity instruction itself. Accordingly, we find that Rentschler's failure to object to the form of the instruction waives all but plain error as to this claim. Even in the context of jury instructions, "[p]lain error 'should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice.'" *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 52, quoting *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus. "Plain error exists only where it is clear that the verdict would have been otherwise but for the error." *Skatzes*, *supra*, at ¶ 52, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). See, also, Crim.R. 30.

**{¶78}** R.C. 2923.03 governs complicity and provides, in relevant part, that "[n]o person, *acting with the kind of culpability required for the commission of the offense*" shall solicit or procure another to commit an offense or aid or abet another in committing the offense. (Emphasis added). Thus, in order to convict an offender

-32-

of possession of drugs under a complicity theory, R.C. 2923.03 requires that the state establish that the accused acted "knowingly." See R.C. 2925.11.

{¶79} In the instant case, Rentschler argues that the complicity instruction was erroneous because it did not include a specific instruction as to the requisite culpability of "knowingly". However, a review of the complicity instruction as given reflects that the jury was told that finding the defendant guilty of complicity requires, among other things, a finding beyond a reasonable doubt that "the defendant shared in the criminal intent of the principal offender." (8/18/22 Tr., 52). The record reflects that the jury instructions elsewhere contained a thorough and complete explanation of the requirement that the crime of drug possession be committed "knowingly", with that requisite degree of culpability having been accurately defined for the jury. Finally, there was ample evidence presented at trial to establish that Rentschler had the requisite criminal intent for the possession offense of which he was found guilty.

{¶80} For all of those reasons, Rentschler is not able to demonstrate the necessary prejudice from the trial court's complicity instruction under the plain error standard and we find that the trial court's failure to redefine "knowingly" when instructing the jury on complicity does not constitute plain error in this instance.

{¶81} Next, Rentschler argues that the trial court erred in giving the "multiple counts" instruction to the jury. The record reflects that, because

Rentschler was charged with two counts in the indictment, the trial court utilized the "multiple counts" jury instruction set forth in 2 CR Ohio Jury Instructions 425.07, which provides in relevant part:

> The charges set forth in each count in the indictment (information) constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your finding as to each count uninfluenced by your verdict as to (the other) (any other) count. The defendant(s) may be found guilty or not guilty of any one or all the offenses charged.

**{¶82}** However, assuming there is no error in the transcription, the trial court here gave that instruction in the following way:

> The charge [*sic*] set [*sic*] in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately from each other count. You must state your finding as to each count influenced [*sic*] by your verdict as to any other count. The defendant may be found guilty or not guilty or [*sic*] any one or all of the offenses charged.

(6/18/22 Tr., 52-53).

**{¶83}** Rentschler asserts that the trial court prejudicially erred by saying "influenced" instead of "uninfluenced" in giving that instruction. We disagree.

**{¶84}** In *State v. Wegmann*, 3d Dist. Allen No. 1-06-98, 2008-Ohio-622, this Court addressed an extremely similar issue, where a trial court used the term "unlawful act" instead of "lawful act" in giving an instruction on "accident" in a murder case. In analyzing the issue in that case, we noted as follows:

> It is well settled that a criminal defendant is entitled to a complete and accurate jury instruction on all issues raised by the evidence. *State v.*

*Williford* (1990), 49 Ohio St.3d 247, 251. However, the precise language of a jury instruction is within the trial court's discretion and will not be disturbed absent an abuse of discretion. *State v. Bailey,* 8th Dist. No. 81498, 2003–Ohio–1834, ¶ 51, citing *State v. Guster* (1981), 66 Ohio St.2d 266, 271.

When reviewing the trial court's charge, a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 141, citing *Cupp v. Naughten* (1973), 414 U.S. 141, 146–47; see, also, *State v. Thompson* (1987), 33 Ohio St.3d 1, 13. Viewing the instructions in their totality, if the law is clearly and fairly expressed, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. *Margroff v. Cornwell Quality Tools, Inc.* (1991), 81 Ohio App.3d 174, 177; *Yeager v. Riverside Methodist Hosp.* (1985), 24 Ohio App.3d 54, 55. Furthermore, there is a strong presumption in favor of the adequacy of jury instructions. Instructions which, in their totality, are sufficiently clear to permit the jury to understand the relevant law shall not be the cause of a reversal upon appeal. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210.

\*\*\*

Wegmann first argues that the trial court misled the jury by using "unlawful" instead of "lawful" when verbally instructing the jury on the accident defense. The trial court used the definition of accident provided in Ohio Jury Instructions (OJI) which states, in pertinent part, that an accident "is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a *lawful* act." 4 OJI 411.01(2) (emphasis added). The trial court apparently misspoke and said "unlawful act" instead of "lawful act." However, Wegmann failed to object to the trial court's misstatement, thereby waiving all but plain error. *State v. Braden,* 98 Ohio St.3d 354, 2003–Ohio–1325, at ¶ 75, citing *State v. Long* (1978), 53 Ohio St.2d 91, paragraphs one and two of the syllabus, and Crim.R. 30(A). Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002–Ohio–68.

> Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros,* 78 Ohio St.3d 426, 431, 1997–Ohio–204; see, also, *State v. Johnson,* 3d Dist. No. 2–98–39, 1999–Ohio–825, and Crim.R. 52(B). Moreover, "[t]he general tendency of reviewing courts is to disregard mere 'technical errors or verbal slips,' when, from the context, it appears that comprehensive and correct instructions have been given and substantial justice has been done." *Washington v. Niemeyer* (1997), 11th Dist. No. 97–P–0002, 1997 WL 586095, quoting *Fairchild v. Lake Shore Elec. Ry. Co.* (1920), 101 Ohio St. 261, 268.

> Looking at the context of the overall charge on accident, we cannot say that the trial court's use of "unlawful" instead of "lawful" during the verbal instruction rises to the level of plain error. ***

*State v. Wegmann*, *supra*, at ¶¶ 103-108.

{¶85} In the instant case, we apply the legal principles set forth in *Wegmann* and begin our analysis by noting that Rentschler failed to object to the trial court's misstatement in the "multiple counts" instruction. Thus, we review this claim solely for plain error. Upon examining the trial court's apparent slip of the tongue in the context of the overall charge on multiple counts, we cannot say that the same rises to plain error. This is particularly so given that, notwithstanding the verbal slip, the trial court quite plainly instructed the jury that (1) each count in the indictment constituted a separate and distinct matter; (2) each count and the evidence applicable to each count must be considered separately; and (3) the defendant may be found guilty or not guilty as to any one or all of the offenses charged. We therefore find that the instruction, in its totality, was sufficiently clear to permit the jury to

understand the law with regard to considering the counts separately and, because Rentschler was actually acquitted on the trafficking charge in Count 1 and convicted only on the possession charge in Count 2, any misstatement by the trial court in giving the "multiple counts" instruction was ultimately not prejudicial. For all of those reasons, Rentchler has failed to demonstrate plain error.

**{¶86}** Next, Rentschler argues that the "other acts" evidence instruction given by the trial court was incomplete, although Rentschler did not object at trial to the same and has again waived all but plain error.

**{¶87}** In this case, as a result of the testimony by parole officer James Peterson that he knew Rentschler from having "supervised" him, the trial court opted to give the jury a cautionary instruction about "other acts" evidence as part of the overall charge. However, as we determined in the second assignment of error, *supra*, Peterson's reference to having supervised Rentschler did not amount to "other acts" evidence as contemplated by Evid.R. 404(B), and therefore the cautionary instruction given on the same was not specifically necessary.

**{¶88}** Nonetheless, a review of the cautionary instruction given by the trial court reflects that the instruction accurately forbade the jury from considering any evidence of prior wrongdoing as proof of Rentschler's character or as evidence that he acted in conformity with that character. The jury was also correctly told that "[i]t does not follow from the defendant's past acts that he committed the particular

crimes charged in this case." (8/18/22 Tr., 51). Accordingly, plain error in the giving of that instruction has not been demonstrated.

**{¶89}** Finally, Rentschler argues that the trial court erred in failing to make the written jury instructions part of the record, contrary to the dictates of R.C. 2945.10(G) and Crim.R. 30(A).

**{¶90}** R.C. 2945.10(G) provides:

The court, after the [closing] argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. *Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.* (Emphasis added.)

Similarly, Crim.R. 30(A) provides, in relevant part:

*** The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

**{¶91}** In *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, the Supreme Court of Ohio held that the failure of a trial court to maintain written jury instructions with the "papers of the case" in violation of R.C. 2945.10(G) is not a structural error requiring automatic reversal. *Id.*, at syllabus. In the absence of a defense objection to the trial court's failure to preserve the written jury instructions

as required, the trial court's failure to do so is reviewed for plain error under Crim.R. 52(B). *Perry*, at ¶¶ 16, 26. Under Crim.R. 52(B), a finding of plain error requires that there be a deviation from a legal rule, the error be an "obvious" defect in the trial proceedings, and the error must have affected a defendant's substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶92}** In the instant case, Rentschler lodged no objection to the trial court's noncompliance with R.C. 2945.10(G) and Crim.R. 30(A), thus we review the noncompliance for plain error. While the error complained of in this instance was certainly a "deviation from a legal rule" and arguably was also "obvious", we cannot find that the trial court's failure to preserve the written jury instructions affected the outcome of the trial or otherwise impacted Rentschler's substantial rights. Thus, we find no plain error. See, also, *City of Columbus v. Mullins*, 10th Dist. Franklin No. 03AP-623, 2004-Ohio-1059 (failure of trial court to maintain written jury instructions with the papers of the case was not reversible error), *State v. Johnson*, 8th Dist. Cuyahoga No. 90450, 2008-Ohio-5869 (no manifest miscarriage of justice resulted from trial court's noncompliance with R.C. 2945.10(G)).

**{¶93}** The fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶94}** In the fifth assignment of error, Rentschler contends that the trial court erred in imposing an indefinite prison term pursuant to the Reagan Tokes Act, with Rentschler arguing that the Reagan Tokes Act is unconstitutional.

**{¶95}** Rentschler did not challenge the constitutionality of the Reagan Tokes Law in the trial court, so we therefore apply the plain-error standard of review in this case. *State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, ¶ 57. "An error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 8, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 245, 2002-Ohio-2126, ¶ 32.

**{¶96}** As this Court noted in *Ball*, *supra*, challenges to the Reagan Tokes Law do not present a matter of first impression in this Court. *Ball* at ¶ 59. "Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights." *Id.* citing *e.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16,

2022-Ohio-96, ¶ 21. We have also rejected constitutional challenges related to the jury trial issue. *See Ball* at ¶ 61-63.

**{¶97}** Additionally, in *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, the Supreme Court of Ohio recently reviewed the Reagan Tokes Law and held that indefinite sentencing pursuant to that law was constitutional.

**{¶98}** Thus, on the basis of *Hacker* and all the prior precedent of this Court, we find no merit to Rentschler's challenge to the Reagan Tokes Law.

**{¶99}** The fifth assignment of error is overruled.

*Seventh Assignment of Error*

**{¶100}** In the seventh assignment of error, Rentschler argues that the cumulative effect of errors in the trial court denied him a fair trial. Specifically, Rentschler asserts that the cumulative effect of the errors that he alleged in his first six assignments of error amounted to reversible error.

**{¶101}** "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

**{¶102}** "'To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors.'" *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

**{¶103}** Because we did not find multiple errors as alleged by Rentschler in the first six assignments of error, and because there is no reasonable probability that the trial outcome would have been different but for the matters Rentschler has raised on appeal, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

**{¶104}** The seventh assignment of error is overruled.

*Conclusion*

**{¶105}** Having found no error prejudicial to the defendant-appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**